**SUMMONS ISSUED**



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ MAY 2 – 2013 ★

LONG ISLAND OFFICE

| | |
|---|---|
| SPLASH GUARD, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No._____ |
| | ) |
| EDISON NATION, LLC; and | ) |
| PAULA L. KELLY, | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendants | ) |
| | ) |

FEUERSTEIN, J

TOMLINSON, M

## COMPLAINT FOR DECLARATORY JUDGMENT

For its Complaint, Plaintiff Splash Guard, LLC ("Splash Guard"), by and through the undersigned counsel, alleges as follows:

## THE PARTIES

1.     Splash Guard is a New York corporation with a place of business located at 22 Cousins Street, Northport, NY 11768.

2.     On information and belief Edison Nation, LLC ("Edison Nation") is a North Carolina corporation with, upon information and belief, a principal place of business located at 520 Elliot Street, Suite 200, Charlotte, NC 28202.

3.     On information and belief Paula L. Kelly ("Kelly") is an individual residing at 1185 Bay Drive, Dixon, IL 61021. ("Edison Nation" and "Kelly" collectively "Defendants")

## JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction over this action because it arises under the patent laws of the United States, 35 U.S.C. §§ *1 et seq.,* and seeks relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ *2201 et seq.*

1

5.     The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

6.     Upon information and belief, this Court has personal jurisdiction over Defendant Edison Nation at least by virtue of cease and desist letter mailed to Splash Guard into this District with the intention of interfering with the business of Splash Guard within this judicial District and demanding that past damages for patent infringement be submitted to Defendants from this District. A copy of the cases and desist letter sent by Edison Nation with attached proposed License Agreement are attached as Exhibit 1.

7.     Venue is proper under 28 U.S.C. §§ 1391 and 1400.

### BACKGROUND

8.     According to the records of the United States Patent and Trademark Office ("USPTO"), Kelly is the record owner, with purported enforcement rights, of United States Patent No. 6,584,984, entitled "Protective Headband", issued on July 1, 2003 (the "'984 patent"), attached hereto as Exhibit 2.

9.     Martin J. Ciesinski and Chris J. Dowhie, residents within this District, created and developed a splash guard for children and were granted U.S. Patent No. 7,310,827 ("'827 Patent") on December 25, 2007 for their design based on a patent application filed on October 31, 2005.

10.     A true and correct copy of the '827 Patent is attached hereto as Exhibit 3.

11.     U.S. Patent No. 7,310,827 was assigned to Splash Guard on September 3, 2008.

12.     Splash Guard has manufactured, sold and offered its patented Splash Guard for sale under the trademark "LIL RINSER" openly and notoriously at least as early 2007, a period of at least 6 years while the '984 Patent was in full force and

2

effect.

13.     Edison Nation is not named as an inventor on the face of the '984 Patent nor do the records of the USPTO reflect any assignment of any rights to Edison Nation.

14.     During prosecution of the application that led to the '984 Patent applicant Kelly amended the specification on April 23, 2003, more than five months after a Notice of Allowance of the application was issued on November 14, 2002, to make reference to U.S. Patent No, 4,481,680 to Wilson ("Wilson '680") and suggested to the Examiner that the relevance of this reference was that it disclosed the use of a "Snap" to connect the ends of Wilson's soap guard, while being silent and not mentioning that Wilson also read at least on the claims 1, 17 and 21, which were ultimately issued.

15.     Upon information and belief, Kelly was aware of information material to the claims 1, 17 and 21, including the Wilson '680 Patent, and, with a deceitful intent, chose not to disclose that information the USPTO thereby violating her duty of candor required by 37 CFR 1.56 MPEP §§ 2001 et seq.

16.     The "Reasons For Allowance" of claims 1, 17 and 21 were misguided and improper since the devices defined by these claims are clearly anticipated by prior art before the Examiner and reflected in the prosecution record of the USPTO, including but not limited to the Wilson '680 Patent, and other prior art.

17.     There is an actual controversy between Splash Guard and Defendants, regarding whether Splash Guard infringes any valid claim of the '984 Patents by making and selling its LIL RINSER splash guard, and whether any of the claims of the '984 Patent are valid and/or enforceable.

## COUNT I

### DECLARATORY JUDGMENT OF INVALIDITY OF
### U.S. PATENT NO. 6,584,984

18.     Splash Guard repeats and realleges the allegations of paragraphs 8 through

as if fully set forth herein.

19.     The '984 Patent is invalid for failure to comply with the requirements of

Title 35 of the United States Code, including, without limitation, one or more of §§ 101,

102, 103 and 112.

20.     The '984 Patent is invalid because, among other things, there is prior art,

not considered and/or considered and not properly applied by the U.S. Patent and

Trademark Office in issuing the '984 Patent, that anticipates the claims.

21.     Splash Guard seeks and is entitled to a declaratory judgment that all

claims in the '984 Patent are invalid.

## COUNT II

### DECLARATORY JUDGMENT OF NONINFRINGEMENT OF
### U.S. PATENT NO. 6,584,984

22.     Splash Guard repeats and realleges the allegations of paragraphs 1 through

as if fully set forth herein.

23.     Splash Guard makes and sells its "LIL RINSER" product.

24.     Splash Guard does not infringe any valid claim of the '984 Patent.

25.     Splash Guard seeks and is entitled to a declaratory judgment that Splash

Guard 's customers who purchase and sell "LIL RINSER" splash guard obtained from

Splash Guard do not infringe any valid, enforceable claim of the '984 Patent.

## COUNT III

### DECLARATORY JUDGMENT OF UNENFORCEABILITY OF U.S. PATENT NO. 6,584,984

26.    Splash Guard repeats and realleges the allegations of paragraphs 1 through as if fully set forth herein.

27.    The '984 Patent is unenforceable because, among other things, Kelly committed inequitable conduct during prosecution of the '984 Patent.

28.    Upon information and belief, the failure of Kelly to cite materials and information to the USPTO during prosecution of the '984 Patent prior to allowance and diverting the Examiner's focus from the teachings in Wilson '680 in relation to claims 1, 17 and 21 was done with deceptive intent.

29.    Upon information and belief, Wilson is highly material to the patentability of the '984 Patent and Kelly failed to disclose information pertaining to Wilson as it related to the constructions recited in claims 1, 17 and 21 with an intent to deceive the USPTO.

30.    Upon information and belief, there is a substantial likelihood that a reasonable patent examiner would not have allowed claims 1, 17 and 21 of the '984 Patent had the patent examiner known about the information the applicant failed to disclose or draw his attention to.

31.    Upon information and belief, the '984 Patent is unenforceable by reason of unreasonable delay, laches, waiver and/or acquiescence.

## COUNT IV

## DECLARATORY JUDGMENT THAT PLAINTIFF
## NOT LIABLE FOR MONETARY DAMAGES

32.     Defendants have not marked their product WaterBAND with the asserted patent number 6,584,984 as required by the marking statute, 35 U.S.C §287(a).

33.     By reason of failure by Defendants to mark their product Defendants are not entitled to damages for sales at least through April 17, 2013 and a declaration by this Court to that effect is respectfully requested.

### JURY DEMAND

34.     Splash Guard hereby demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Splash Guard requests that this Court enter judgment against Edison Nation and Kelly as follows:

A declaration that the '984 Patent and each of the claims therein are invalid;

A declaration that the '984 Patent and each of the claims therein are unenforceable;

A declaration that Splash Guard 's LIL RINSER splash guard and customers that sell same manufactured by Splash Guard do not infringe any valid, enforceable claim of the '984 Patent;

A declaration that Defendants are not entitled, even if infringement of a valid claim is determined by this Court, to any damages for the period prior to April 17, 2013 by reason of failure by Defendants to comply with the marking statute, 35 U.S.C. §287(a);

A preliminary and permanent injunction precluding Kelly and/or Edison Nation,

its officers directors, employees, agents and all other persons acting in concert or participation with them from suing for infringement or otherwise asserting infringement of the '985 Patents against Splash Guard and/or its customers that have or will have purchased LIL RINSER splash guard manufactured by Splash Guard;

A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Splash Guard's reasonable attorneys' fees; and

An award to Splash Guard of such further relief at law or in equity as the Court deems just and proper.

Dated:          May 1, 2013                              Respectfully submitted,

                                                        LACKENBACH SIEGEL LLP

                                                        Myron Greenspan (MG 7347)
                                                        Robert Golden (RG 6157)
                                                        Eileen C. DeVries (ED 1114)
                                                        Lackenbach Siegel, LLP
                                                        One Chase Road
                                                        Scarsdale, NY 10583
                                                        Phone 914-723-4300
                                                        Fax 914-723-4301

                                                        Attorneys for Plaintiff

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   MAY 0 2 2013   ★

LONG ISLAND OFFICE

# EXHIBIT 1

# Edison NATION

Reinventing American Ingenuity

**Rich Holmes**
(704) 369-7352
rich.holmes@edisonnation.com

April 17, 2013

**VIA E-MAIL:** Marty@lilrinser.com
**VIA FEDEX DELIVERY**
Martin J. Ciesinski, President
Splash Guard, LLC
7 Beaver Dam Creek Road
Westhampton, NY  11977

**RE:    U.S. Patent No. 6,584,984 B2 for "PROTECTIVE HEADBAND"**

Dear Mr. Ciesinski:

EDISON NATION, LLC ("EDISON NATION") is an organization involved in a variety of product development activities across a wide range of product categories.  EDISON NATION owns an extensive portfolio of intellectual property for its various products, including an innovative shampoo headband for young children known as "Bye Bye Tears" that is secured by the above-referenced utility patent issued by the United States Patent and Trademark Office (the '984 Patent).

It has come to our attention that SPLASH GUARD, LLC ("SPLASH GUARD") is importing, offering for sale, and selling a shampoo rinsing headband for kids called "Lil Rinser" that incorporates and uses inventions covered by the '984 Patent owned by EDISON NATION.  It is our opinion that the "Lil Rinser" currently offered for sale on the Lil Rinser website, diapers.com, amazon.com, and a number of other outlets clearly infringes upon the '984 Patent.

EDISON NATION respectfully requests that SPLASH GUARD take one of the two following actions:

1.    Execute and return to us the attached patent license agreement.  By doing so, SPLASH GUARD will be authorized to sell products protected by the '984 Patent.

2.    Alternatively, cease and desist from importing, advertising, promoting, offering to sell and/or selling the "Lil Rinser" product on your website, diapers.com, amazon.com, all retail stores, and through any and all other outlets.

1

Splash Guard, LLC
Page **2** of **2**
April 17, 2013

Regardless of which option you choose, kindly provide us an accounting of how many "Lil Rinser" units you have sold through any sources and outlets and the gross revenues derived from such sales so that we may discuss an appropriate settlement for your past sales of the "Lil Rinser" product.  We also request an accounting of how many "Lil Rinser" units you have in your inventory (including any and all affiliates, agents, or other related parties) and how many units you have ordered from your supplier(s) that have not yet been delivered to you.  Furthermore, we request that you provide us with the name, address and other specific identifying information of any and all suppliers, wholesalers or distributors from which you obtained the "Lil Rinser", including any and all related correspondence, shipping information, bills of lading and/or purchase receipts.

I am optimistic that this matter can be resolved quickly and amicably.  By enclosing the attached license agreement, EDISON NATION is proposing a resolution whereby SPLASH GUARD can avoid the inconvenience of costly litigation.  If you have any questions, please feel free to contact me at the phone number above or on my mobile phone at (704) 999-9564.  I welcome your call at your earliest convenience.

I would appreciate your formal response to this proposal within ten (10) business days of this letter.  In the event that you are not willing or able to reach a resolution to this matter, EDISON NATION will consider pursuing all available legal and equitable remedies, including without limitation a lawsuit against SPLASH GUARD seeking actual damages, treble damages, costs and injunctive relief.  I look forward to hearing from you.

Best regards.

Very truly yours,

Rich Holmes, Esq.

Encls: U.S. Patent No. 6,584,984 B2
        Patent License Agreement

cc:    Todd Stancombe, President, Edison Nation, LLC (via email)

2

## PATENT LICENSE AGREEMENT

This Patent License Agreement ("Agreement") is entered into as of April _____, 2013 ("Effective Date") by and between Edison Nation, LLC ("Licensor"), a North Carolina limited liability company having a principal place of business at 520 Elliot Street, Suite 200, Charlotte, North Carolina 28202, and Splash Guard, LLC, a New York limited liability company having its principal place of business at 7 Beaver Dam Creek Road, Westhampton, New York 11977 ("Licensee"), (each of Licensor and Licensee a "Party," and, collectively, "the Parties").

### RECITALS

WHEREAS, Licensor is the owner of all right, title, and interest in the Licensed Patent Properties (as hereinafter defined);

WHEREAS, Licensee desire to use certain rights to the inventions under the Licensed Patent Properties, in accordance with the terms and conditions of this Agreement;

NOW THEREFORE, in exchange for the mutual covenants and promises contained herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows.

### DEFINITIONS

In addition to the terms defined throughout, the following terms shall be defined as follows.

1.1 "Affiliates" means a corporation, association or other entity that directly or indirectly controls, is controlled by, or is under common control with, the party in question.

1.2 "License" shall mean the non-exclusive license granted from Licensor to Licensee and its Affiliates under Section 2.1.

1.3 "Licensed Patent Properties" means the patent identified on EXHIBIT A, together with all foreign counterparts thereof and all continuations, divisionals, continuations-in-part, reissues, reexaminations thereof, and all patents issued thereon.

1.4 "Licensed Product" means a product substantially identical to any of the embodiments depicted in any of the active Licensed Patent Properties, or any product covered by any claim of the active Licensed Patent Properties that includes a third party's recognizable copyright or trademark which Licensee has obtained such third party's express written authority to use in conjunction with the Licensed Product, and which is reasonably likely to increase the commercial appeal of such product.

1.5 "Net Sales" shall mean the gross amount of payment or other consideration received by Licensee for the Licensed Products by a sale less: (A) customer cash and credit returns and other customer allowances actually granted and (B) custom duties, reasonable prepaid outbound transportation

1

expenses and insurance, taxes and other governmental charges (other than taxes on the income or capital of Licensee) imposed on the transaction.

1.6    "Territory" shall mean the world.

## LICENSE GRANT

2.1    Licensor hereby grants to Licensee and its Affiliates a non-exclusive, non-sub-licensable license, under the Licensed Patent Properties, to make, have made, use, sell, offer for sale and import, during the Term, Licensed Products in the Territory ("License Grant").

2.2    Licensor further grants to Licensee and its Affiliates a non-exclusive, non-sub-licensable license to use any licensed trademarks in association with the manufacture and sale of the Licensed Patent Products during the Term. Licensee expressly agrees that it will designate any marks on the Licensed Patent Products in a manner specified by Licensor.

## ROYALTIES AND PAYMENT

3.1    In consideration for the License Grant set forth in Section 2.1 of this Agreement, Licensee shall pay Licensor royalties ("Royalties") equal to five percent (5%) of Net Sales of Licensed Products sold by Licensee occurring after the Effective Date. Each Royalty payment shall be paid by check that is accompanied by a statement setting forth in reasonable detail the basis for the amount of the Royalties (each, a "Royalty Statement").

3.2    Payments shall be made monthly within thirty (30) days of the last day of each calendar month for which any Licensed Product was sold.

## REPRESENTATIONS AND WARRANTIES

4.1    Licensor represents and warrants to Licensee that:

4.1(a)    Licensor is the sole and exclusive owner of each of the Licensed Patent Properties and has the full, rightful authority to grant the licenses set forth herein.

4.1(b)    The License Grant does not conflict with any obligations Licensor has to any third parties.

4.1(c)    Licensor is duly authorized to execute and perform this Agreement.

4.1(d)    The Licensed Patent Properties are all of the patents owned by Licensor that are necessary to make, use, sell, offer for sale or import the Licensed Products.

4.2    Licensee represents and warrants to Licensor that it is duly authorized to execute and perform this Agreement and shall use its best efforts to assist Licensor with the development of the Licensed Patent Product in order to facilitate Licensor's commercialization of the Licensed Patent Products.

2

## TERM AND TERMINATION

5.1     The term of this Agreement ("Term") shall commence on the Effective Date, but the License granted herein shall be deemed to have commenced on the date the first Licensed Product was developed, manufactured, promoted, advertised, marketed, imported, used, sold, offered for sale and/or distributed by Licensee. This Agreement, including the License granted herein, shall continue through the expiration of the last of the Licensed Patent Properties.

5.2     Either Party may terminate this Agreement immediately if the other Party commits a material breach of this Agreement that is not substantially cured within thirty (30) days following receipt of written notice of such breach. Following the termination of this Agreement, Licensee shall have six (6) months to liquidate any existing inventory of the Licensed Patent Product.

5.3     The provisions of subsections 8.1 – 8.8 shall survive the termination of this Agreement.

## MARKING

6.1     Licensee shall mark each Licensed Product with the number of any active patent of the Licensed Patent Properties applicable to that Licensed Product.

## AUDIT

7.1     Licensor shall have the right, once annually, upon prior written notice, to have an independent certified public accountant firm, found reasonably acceptable to Licensee, to audit the books and records, in the possession or control of Licensee, or any of its Affiliates, that are directly related to royalties due under this Agreement. In the event that the audit reveals an underpayment of a Royalty by Licensee, Licensee shall pay any undisputed difference within thirty (30) calendar days following written notice of the underpayment. If the underpayment is in excess of Ten Thousand Dollars (U.S.) and No Cents ($10,000.00), then Licensee shall reimburse Licensor for the reasonable, actual and documented costs of the audit.

## GENERAL TERMS

8.1     Governing Law. This Agreement is entered into in and shall be governed by the laws of the State of North Carolina applicable to agreements executed and fully performed within the State of North Carolina. Each Party consents and agrees that the federal and state courts for North Carolina will have personal and subject matter jurisdiction over it with respect to any dispute or controversy relating to this Agreement, and that process may be served on it in accordance with the notice provisions set forth herein.

8.2     Notices. All communications, including without limitation, notices and approvals, required or permitted by this Agreement shall be in writing and shall be sent by hand delivery, courier, or facsimile (provided that confirmation of the transmission is received) to the addresses set forth below. Any communication shall be deemed received on the date actually received, except with respect to courier deliveries, which shall be deemed received three (3) day after deposit with the courier:

3

To Licensor:   Edison Nation, LLC
520 Elliott Street, Suite 200
Charlotte, North Carolina  28202
ATTN:  Rich Holmes, General Counsel

To Licensee:   Splash Guard, LLC
7 Beaver Dam Creek Road
Westhampton, New York  11977
ATTN:

Each Party may at any time designate by like notice hereunder another address to which any notices and other communications to it hereunder must thereafter be transmitted.

8.3     <u>Remedies; No Consequential, etc. Damages</u>.  Except as otherwise expressly provided herein, the remedies provided herein are not exclusive and the Party claiming a breach or default of this Agreement may pursue all other remedies, both legal and equitable, alternatively or cumulatively.  Notwithstanding any other provision of this Agreement, neither Party nor its Affiliates shall have any liability to the other Party, its Affiliates or any third Party for any indirect, incidental, consequential, special, exemplary or punitive damages or losses, including lost profits, revenue or savings, arising under or related to this Agreement.

8.4     <u>Waiver</u>.  No express or implied waiver by a Party to this Agreement of any default shall be a waiver of a future or subsequent default.  The failure or delay of any Party to this Agreement in exercising any rights granted to it hereunder shall not constitute a waiver of any such right, and any single or partial exercise of any particular right by any Party to this Agreement shall not exhaust the same or constitute a waiver of any other right provided herein.

8.5     <u>Assignment</u>.  Licensee may not assign this Agreement without the consent of Licensor, provided, however, that such consent shall not be unreasonably withheld.  Licensor may assign this Agreement without the consent of Licensee.  Upon an authorized assignment, this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

8.6     <u>Entire Agreement; Modification; Severability</u>.  This Agreement contains the entire understanding between the Parties with respect to its subject matter, and supersedes all negotiations, agreements, representations, warranties, and commitments, whether in writing or oral, prior to the date hereof.  This Agreement may not be modified or terminated orally, and no modification or waiver shall be valid unless contained in a writing signed by both Parties.  In the event any provision of this Agreement or the application of any such provision to any Party is contrary to law, void for any reason or unenforceable, such provision shall be subject to modification and severance from this Agreement and this Agreement deemed amended to comply with such law.

8.7     <u>Relationship of the Parties</u>.  The Parties to this Agreement do not intend by the terms of this Agreement to create any agency, partnership or joint venture relationship.  Neither Party shall incur any obligation or liability on behalf of the other.

4

8.8    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same agreement.

      IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed by its duly authorized officers or representatives as of the date first set forth above.

**EDISON NATION, LLC**    **SPLASH GUARD, LLC**

By: _____    By: _____
     Signature         Signature

     _____         _____
     Name         Name

     _____         _____
     Title         Title

     _____         _____
     Date         Date

## EXHIBIT A

Licensed Patent Properties

US Patent No. 6,584,984 B2